**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND ALEX STOKES, | : | CIVIL ACTION |
| MARITZA ESPINO FRIAS, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 21-1473 |
| ALEJANDRO MAYORKAS, et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**Timothy R. Rice**                                                           **March 14, 2022**
**U.S. Magistrate Judge**

Both parties agree that the immigration application of Plaintiff Maritza Espino Frias, a
citizen of the Dominican Republic, turned on whether she verbally misrepresented that she was a
United States citizen when she was stopped by a U.S. Customs and Border Patrol ("CBP")
officer on March 5, 2011.  Def. Br. (doc. 16) at 1; Pl. Resp. (doc. 19) at 2.  They dispute whether
Ms. Frias received a fair opportunity to address that allegation.

 Frias and her husband, Plaintiff Raymond Stokes, a United States citizen, request
injunctive relief directing the American consulate in the Dominican Republic that there is
insufficient evidence to sustain a finding of a false claim to citizenship by Frias.  Am. Compl.
(doc. 2) at 14   The government moves to dismiss or, in the alternative, for summary judgment.
Def. Br. at 12.  Plaintiffs oppose the government's motion but did not cross-file for summary
judgment.  See Pl. Resp.  Nonetheless, I may enter summary judgment *sua sponte*.  Celotex
Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess
the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that
she had to come forward with all of her evidence").

More than seven years after Frias's entry into the United States, including six years

during which the United States Citizenship and Immigration Services ("USCIS") approved multiple steps in Frias's immigration process without raising an allegation of verbal misrepresentation, USCIS denied her application.  Administrative Record (doc. 15) ("R.") at 105, 107.  Its denial was based on an arrest report (the "Report") that had never been disclosed to Plaintiffs until this litigation was instituted in 2021.  Am. Compl. at 14 (requesting the government to produce the document(s)).  The Report alleged that Frias had verbally misrepresented in English that she was a United States citizen.  R. at 264.

Although I decline to issue the consular directive that Plaintiffs request, I find that the evidence viewed in the light most favorable to the government establishes that it failed to timely provide Frias key documents necessary to effectively address its allegation of verbal misrepresentation.  This failure violated the government's own regulations and Plaintiffs' due process rights.  I will enter summary judgment in favor of Plaintiffs and remand the case to the USCIS for consideration of a revised waiver application.

**<u>Jurisdiction</u>**

The government argues that I lack jurisdiction over Plaintiffs' claim because the State Department's discretionary visa determination is non-reviewable.  Def. Br. at 8-9 (citing 8 U.S.C. § 1252).  It concedes, however, that I have jurisdiction over Plaintiffs' alternative argument, that USCIS's non-discretionary decision to deny her waiver application violated the Administrative Procedures Act ("APA").  Def. Br. at 8.  Because Plaintiffs have challenged only USCIS's non-discretionary determination, I have jurisdiction to address this claim.  <u>Mairykeeva v. Barr</u>, 378 F. Supp.n3d 391, 393 n.2 (2019) ("it has long been recognized that the district courts have jurisdiction to review a decision on the merits of an I–130 petition") (citing <u>Adi v. United States</u>, 498 F. App'x 478, 480 (6th Cir. 2012) and <u>Smith v. Holder</u>, 487 F. App'x 731, 733 (3d Cir. 2012)).

**Standard of Review**

 I may set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; [or] . . . without observance of procedure required by law." 5 U.S.C. § 706. This review precludes substituting my judgment for the agency's and prohibits "supply[ing] a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

Individuals who have entered the United States illegally are "inadmissible" for purposes of later, legal immigration. 8 U.S.C. § 1182(a)(6)(C). Nonetheless, "inadmissible" aliens who have married U.S. citizens and/or have U.S. citizen children may seek a waiver of that inadmissibility if the exclusion of the spouse/parent would impose "extreme hardship" on their family. 8 U.S.C. § 1182(a)(9)(B)(5). Discretionary waivers may be granted to inadmissible aliens who entered the United States by "fraud or willfully misrepresenting a material fact," id. § 1182(a)(6)(C)(i), but not to those who entered the United States by "falsely represent[ing] himself or herself to be a United States citizen," id. § 1182(a)(6)(C)(ii). That distinction is critical here.

Due process in immigration proceedings requires three things. Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001). They are: (1) a decision based on a record that was disclosed to the applicant; (2) an opportunity for applicants to make arguments on their own behalf; and (3) "an individualized determination." Salvador v. Sessions, No. 18-1608, 2019 WL 1545182, at *5 (E.D. Pa. Apr. 9, 2019). USCIS procedures also require it to disclose "derogatory information unknown" to an immigration applicant with enough notice that the applicant can respond. 8 C.F.R. § 103.2(b)(16)(i); Myat Thu v. Att'y Gen. USA, 510 F.3d 405, 412 (3d Cir. 2007) ("we

are not foreclosed from determining whether the [Bureau of Immigration Appeals ("BIA")]

followed proper procedures").  This does not require the production of all documents in an

applicant's file, and a sufficiently detailed summary can suffice.  Salvador, 2019 WL 1545182, at

*6; see also Sehgal v. Lynch, No. 15-2334, 2016 WL 696565 (7th Cir. Feb. 22, 2016) (finding

summary that "repeated [the] handwritten statement verbatim" satisfied § 103.2).

**Undisputed Material Facts**

The parties agree on almost all the facts.  In February 2011, Frias was smuggled across

the Mexican border to a safe house in the United States.  R. at 268.  Several weeks later, she was

given a Puerto Rican driver's license and social security card, and put in a truck destined for

New Jersey, where her aunt apparently resided.  Id. at 267-68.  Frias later contended she was

unaware that Puerto Rican citizens were also U.S. citizens, and her advocate cited a report

showing that this misimpression is common.  Id. at 41 (citing 2017 report titled "Nearly Half of

Americans Don't Know Puerto Ricans Are Fellow Citizens"), 73 (noting that, even among

American citizens with a college degree, 23 percent are unaware that Puerto Ricans are U.S.

citizens).

On March 5, 2011, Frias's truck was stopped by Gilbert Ruiz, a CBP officer, who

arrested Frias and her driver.  Id. at 264.  Frias provided a sworn statement the next day in

Spanish.  Id. at 267.  She admitted that the Puerto Rican documents in her possession were

fraudulent.  Id. at 268.  She did not claim U.S. citizenship, but instead expressed fear for her

personal safety if she was returned to the Dominican Republic.  Id. at 267-69.  Frias was released

following her arrest pending further proceedings and thereafter applied for asylum.  Id. at 73,

269.

In 2013, Frias married Stokes and they had a son together.  Id. at 91.  In June 2015,

Stokes successfully petitioned to allow his wife to obtain legal status.  Id. at 107 ("I-130 Petition

4

for Alien relative"); see also 8 U.S.C. § (a)(1)(A)(i).  In 2016, Frias's daughter from her prior relationship became a legal permanent resident in the United States.  Id. at 94.  On November 1, 2017, Frias's application for a "Form I-160 Waiver of Admissibility" was granted.  Id. at 105. Frias's waiver and alien spouse petition were granted despite her use of fraudulent documents, in accordance with the statutory language distinguishing between "fraud or willfully misrepresenting a material fact" and "falsely represent[ing] . . . herself to be a United States citizen."  Id. at 74, 105, 107; 8 U.S.C. § 1182(a)(6)(C).  Based on her prior approvals, Frias withdrew her application for asylum.  R. at 139.  She then returned to the Dominican Republic to complete the last step in her legal immigration, interviewing with the local consulate and receiving her legal immigrant visa.  Id. at 74, 94, 105.

Instead, on April 20, 2018, Frias learned her visa had been denied based on a finding that she had falsely claimed to be a U.S. citizen.  Id. at 97, 102.  The consulate failed to provide additional information.  Id.  Her appeal was unsuccessful and the government again failed to provide any additional information about what had changed since her initial applications were accepted.  Id. at 74.

Frias re-applied for a waiver of inadmissibility from USCIS on August 17, 2018.  Id. at 43.  She explained that "when [she] entered the U.S. on 2/22/2011, [she] was fleeing from a violent relationship and was in fear for [her] life."  Id. at 89.  She stated that she "immediately requested asylum in the U.S. and although [she] was in possession of someone else's Puerto Rican birth certificate, at no time did [she] offer the birth certificate or claim to be a U.S. citizen."  Id.  She submitted an affidavit stating, in part, "I am not sure exactly what the driver was asked as I did not speak or understand English at that time but I could see that he was nervous answering the questions of the border patrol."  Id. at 152.  Her lawyer noted the extreme hardship her family would endure if her waiver was not granted.  Id. at 103-04.  Multiple friends

and family members submitted letters and affidavits in support of the waiver application and several mentioned that Frias had first learned to speak English while living in the U.S.  Id. at 181, 190.

USCIS denied the waiver re-application on June 26, 2019.  Id. at 43.   It explained that the U.S. Department of State had found Frias inadmissible because she had falsely represented she was a U.S. citizen.  Id. at 44.  It further explained that, "on March 5, 2011 you presented yourself as a U.S. citizen to a U.S. Federal Officer in an attempt to gain admission into the United States."  Id.  It then noted that such a finding required denial of her application.  Id.

 Frias appealed, arguing that she had not known the Puerto Rican documents implied U.S. citizenship.  Id. at 36-37.  She noted her claims were previously accepted when her husband's petition and her original waiver for inadmissibility were approved.  Id. at 36-42, 105, 107.

In its September 2019 denial of the appeal, USCIS disclosed for the first time that its determination was based on the Report, which featured allegations that Frias had verbally represented that she was a U.S. citizen when she was stopped by CBP.  Id. at 50-51.  USCIS noted that, in response to Ruiz's question of whether Frias was a U.S. citizen, she had first mouthed and then said "Yes," and had repeatedly stated that she was from "San Juan," Puerto Rico.  Id.  USCIS summarized that, "[o]n repeated occasions [Ms. Frias] made oral false claims of U.S. Citizenship to a U.S. Border Patrol Officer."  Id. at 51.  It concluded that "[she] knowingly and willingly presented herself as a U.S. citizen in order to evade inspection at a U.S. Port of Entry and gain admission into the United States."  Id.

Frias again appealed, denying the false citizenship allegation, and requesting the source of those allegations.  Id. at 72-78.  Her appeal was denied in February 2020.  Id. at 22.  USCIS ruled that "on March 5, 2011 [ Frias] willfully and willingly made False Claims of U.S. Citizenship to a U.S. Customs and Border Patrol Officer in an attempt to evade inspection and

gain admission to the United States." Id. at 23.  It explained that "[t]his encounter is reflected in DHS systems and is well-documented in U.S. Customs and Border Protection documents, records which USCIS also holds."  Id.

The documents it referenced, however, were not provided to Frias.  Id.  Nor did the USCIS state whether Frias made the contested citizenship claim in English or Spanish.

USCIS denied a final appeal by Ms. Frias in November 2020.  Again, it failed to disclose the underlying documents upon which it based the denial.  Id. at 1.  Moreover, it inaccurately noted that Frias had not contested the finding that she "falsely claim[ed] to be a U.S. citizen."  Id. at 2; but see id. at 10 (3/23/20 letter brief asserting Frias had never been asked if she was a U.S. citizen and had never answered that she was a U.S. citizen).  It also declined to "disturb the U.S. Department of State's inadmissibility finding" based on Frias's March 6, 2011, sworn statement, in which Frias averred that she had knowingly presented false Puerto Rican identity cards in an effort to "cross the checkpoint without problems."  Id. at 3.  USCIS further concluded that Frias was not entitled to the Report, and that "[t]he derogatory information concerning [her] false claim to citizenship was disclosed to her on the date of her arrest and detention."  Id.

On December 14, 2021, the government finally filed the Report as part of the Administrative Record in this case.  See id. at 263-69.

**Analysis**

The government violated due process and its own regulations by failing to timely provide Frias with prior notice of, and an opportunity to respond to, the underlying evidence it relied upon to reject her applications.  See § 102.7; Flores-Rodriguez v. Garland, 8 F.4th 1108, 1113–14 (9th Cir. 2021) (finding the government violated the applicant's due process rights by failing to provide adequate notice that an alleged false claim of citizenship was the "main issue," foreclosing his ability to brief the issue and prepare evidence and witnesses).

7

Although the parties now agree that the pivotal issue is whether Frias verbally represented that she was a U.S. citizen during her 2011 arrest, the government failed to disclose that its adverse waiver finding was based on an alleged verbal misrepresentation until it summarized the Report in its September 2019 decision.  By that time, both Frias's immigrant visa application and her waiver application had already been denied twice.  Compare R. at 43, 50-51, 97, 102.  Moreover, the contested document itself was not disclosed until December 2021 as part of this federal court litigation.

The government asserts it met its duty to disclose the "derogatory information" about Frias's alleged conversation with Ruiz because it was disclosed to her at the time of her arrest and that its summaries of the conversation were sufficient to meet its obligations under § 102.7. R. 3 (November 2020 opinion).  Yet there is no evidence that Frias was given a copy of the actual Report at the time of her arrest and no mention of a verbal representation in the decisions rejecting her visa and waiver applications before September 2019.  Id. at 43-44, 97, 102.  To the extent that Frias's conversation with Ruiz in March 2011 constituted the supposed disclosure, the Report states that the conversation was in English, including the English-language "yes" quotation attributed to Frias.  Id. at 265-66.  Even viewed in the light most favorable to the government, however, the only evidence establishes that Frias did not comprehend or speak English at that time.  Id. at 152; accord 181, 190.

The summaries failed to satisfy due process, not only because of their timing but also because they were misleading.  For example, USCIS's November 2020 opinion puts quotation marks around both Frias's statement of "yes" in response to the question of whether she was a United States citizen, and around her representation that she had used the Puerto Rican documents to "cross the checkpoint without problems."  Id. at 3.  Yet the only English language quotes in the actual Report are the words "yes" and "San Juan."  R. 265-66.  Instead, although

Ms. Frias did claim that she intended to use the Puerto Rican documents to "cross the checkpoint without problems" in her March 6, 2011, statement, that assertion was made in Spanish and after she had admitted to being a citizen of the Dominican Republic.  Id. at 267-69.  Moreover, Frias has consistently maintained that she incorrectly believed Puerto Ricans were not U.S. citizens. Id. at 41, 73.  USCIS's interpretation of the documents is based on the premise that she spoke English well enough to know the legal significance of her affirmative responses to Ruiz, but its summaries obscure the evidence within the Report itself that she did not.

Although several of Frias's support letters mention that she had only "learned English" during the time she lived in the United States, Frias was never put on notice that her ability to speak and understand English as of March 2011 was important to her waiver application.  It was only after she was well into the waiver process that she learned that the alleged false representation of citizenship would be the "main issue" in her case.  Flores-Rodriguez, 8 F. 4th at 1113-14.  USCIS's failure to provide earlier notice "may have affected the outcome" of her application.  Id. at 1114.  Frias could have used the Report itself to support her contention that she did not speak English, yet she had no opportunity to effectively advocate that claim to the immigration authorities.[1]  USCIS's failure to disclose the Report prevented Frias from making her best argument and precluded an individualized determination of her petition, in violation of due process.  Salvador, 2019 WL 1545182, at *5; see also Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 447 n.29 (3d Cir. 2016) (noting that due process protections apply

---

[1]    That evidence includes: (1) There are no other quotations from Frias speaking in English. All the other information she allegedly provided is in the passive voice; it is unclear from the report whether the information was provided directly to Ruiz or if he had to obtain it through a Spanish-speaking colleague; (2) Frias was given Miranda warnings on March 5, but the March 6 documentation of her receiving her Miranda rights and making a statement is noted to be in Spanish; and (3) her ability to "read/write English" on the March 5 form was noted only as "n/a". Those facts suggest that, if she received her Miranda rights on March 5, there was at least some communication with her in Spanish on March 5-6.

to aliens who "have become, in some real sense, a part of our population") (citing <u>Yamataya v. Fisher</u>, 189 U.S. 86, 100 (1903)).

USCIS also failed to meet its own regulatory disclosure obligations.  8 C.F.R. § 103.2(b)(16)(i); <u>see also</u> <u>Tetteh v. Bausman</u>, No. 17-1393, 2018 WL 2023491, at *8 (D. Del. May 1, 2018) (remanding USCIS determination that spouse was not entitled to alien relative status because USCIS failed to disclose derogatory information in time for applicant to respond, rendering the district court unable to decide whether the determination was "arbitrary and capricious").  Although the agency is permitted to provide a summary that sufficiently puts the applicant on notice of the derogatory information (or when classified information is involved), neither exception applied here.  8 C.F.R. § 103.2(b)(16); <u>Salvador</u>, 2019 WL 1545182, at *6. Instead, USCIS withheld material information, preventing Frias and Stokes from refuting the rationale for the waiver denial.  <u>See</u> <u>Patil v. Att'y Gen. of U.S.</u>, 326 F. App'x 667, 669 (3d Cir. 2009) (finding Board of Immigration Appeals "abused its discretion" by failing to consider all evidence applicant had submitted).

Finally, the failure to disclose information to Frias has undermined USCIS's decision.  It made no finding about Frias's language abilities in March 2011, and also failed to explain how someone who claims she did not speak English had verbally asserted false U.S. citizenship in English.  <u>Tetteh</u>, 2018 WL 2023491, at *8.  Because the opinion failed to address Frias's affidavit and the other evidence that she did not speak English in 2011, it fails to explain "why evidence, relevant and persuasive on its face, was discredited."  <u>Yun Mei Zhou v. Att'y Gen. of U.S.</u>, 305 F. App'x 865, 868 (3d Cir. 2009) (citing <u>Sotto v. United States INS</u>, 748 F.2d 832, 837 (3d. Cir. 1984)); <u>see also</u> <u>Shardar v. Att'y Gen.</u>, 503 F.3d 308, 314–16 (3d Cir.2007) (finding abuse of discretion when there was no explanation for rejecting applicant's evidence); <u>Noriega v. Gonzales</u>, No. 06-1073, 2009 WL 2424698, at *5 (D.N.J. Aug. 6, 2009) (remanding petition for

spouse to become a legal permanent resident because of failure to explain rejection of evidence rebutting sham marriage allegation).

An appropriate Order accompanies this opinion.